ALBERT E. DENCHFIELD v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

February 24, 1911.

Nos. 16,891—(214).

**Evidence — excessive damages.**

In this, a personal injury action, held, that the evidence sustained the verdict of the jury, except as to the extent of damages awarded. Because the damages awarded are excessive, a new trial is directed, unless the plaintiff consents to a reduction thereof.

Action in the district court for Red Lake county to recover $10,000 for personal injuries, incurred while employed by defendant in loading coal into defendant's locomotive tender from a coal elevator. The complaint alleged defendant failed to supply plaintiff with safe and suitable means and appliances wherewith to perform his work, and failed to keep the appliances provided in such condition that the same were safe for the performance of the work, all of which defendant knew, and of which plaintiff was ignorant because he was inexperienced in the work. The facts are stated in the opinion. The answer alleged contributory negligence. The case was tried before Watts, J., who denied defendant's motion to direct a verdict in its favor, and a jury which returned a verdict in favor of plaintiff for $4,100. From an order denying defendant's motion

[1]Reported in 130 N. W. 551.

for judgment notwithstanding the verdict or for a new trial, it appealed. New trial granted, unless respondent consent that the verdict be reduced to $3,000, in which case the order appealed from is affirmed, and judgment may be entered on the verdict as thus reduced. Modified.

*John L. Erdall, Julius J. Olson* and *Charles Loring,* for appellant.

*Charles E. Boughton,* for respondent.

.SIMPSON, J.

The facts here involved, briefly stated, are as follows: The plaintiff, a man twenty-eight years old, without previous experience in a similar line of work, had been for two months in the employ of the defendant railway company as a wiper or helper in and about the company's roundhouse near Thief River Falls. He worked on a night crew from seven in the evening to six in the morning. As part of his work, he assisted in coaling engines. The supply of coal for this purpose was in an elevated bin, the top of which was about fifty feet high, and the lower side of the sloping bottom a little higher than the top of a locomotive tender. At the bottom of the bin was a sliding door four feet wide. Just opposite or in front of this door was a steel apron or chute, about seven feet long and four feet wide, extending out from the bin, over which, when the door of the bin was opened, the coal passed into the tender. The sides of the chute were about a foot high, and it weighed four hundred or five hundred pounds. Fastened to it, near the outer end, were cables which passed over pulleys at the top of the bin, and had counterweights attached, so the chute could be easily turned up beside the bin, when not in use, or pulled down into position when it was to be used. The end of the chute next the bin had no fixed or firm attachment to the bin, but was attached by chains at each side of the chute. These chains would permit the chute to be pulled away from the bin about a foot. Near the outer end of the chute, and to the center of the bottom, a pin a little more than two feet long was attached by a ring. This attachment permitted the pin to be turned partially around and to swing freely in every direction. When the chute was

in place to deliver coal to an engine, it was supported on this pin; the unattached end of the pin resting on the sloping top of the oil box in the tender.

At eleven o'clock, on a dark night, plaintiff and another employee undertook to deliver coal to an engine which had been spotted opposite this bin. Plaintiff pulled down the chute, rested the end of the pin on the top of the oil box, and stood at the south side of the chute, steadying it. His companion slid up the door of the coal bin. This was the usual method followed in doing the work. When the coal began running down the chute, on the night in question, the end of the chute, in some manner, came down upon or against plaintiff's leg, causing a fracture below the knee and other injuries. The plaintiff had a verdict for $4,100. The defendant appeals from an order denying its alternative motion for judgment or a new trial, and by various assignments of error questions the sufficiency of the evidence to sustain the verdict and also certain rulings of the trial court in admitting testimony. The defendant urges that the evidence does not establish any negligence on the part of the defendant, that it does establish that the plaintiff was negligent and assumed the risk, and that the verdict is excessive.

1. The negligence charged in the complaint is a negligent failure to furnish a reasonably safe appliance; it being claimed that the coal chute, as constructed and supported, was so unstable when coal was passing down it that a person required to stand in the tender and steady the chute was exposed to unnecessary and unreasonable danger. The plaintiff testified that at the time of the accident, while he was steadying the chute, "the coal kind of bounced around in this apron, there were big lumps and all kinds of dust, as far as I can remember, and it shook around in there, and it kind of shoved the chute just enough to knock the pin out and it got to swinging for me, and I couldn't hold it after it knocked the pin out and it came down and caught me just below the knee of my right leg, and broke it."

There was testimony that if the pin slipped the chute would fall down; that it usually came down straight; that the plaintiff had not been warned of any danger incurred in standing near the chute to

steady it. On behalf of the defendant it was shown that this kind of a chute was in general use, and that at this particular station no accidents had happened from its use during a period of four years, except the one to plaintiff. When this chute was in use, delivering coal to a tender, the lower end, balanced as it was on a pin, the blunt end of which rested on a sloping surface, might very well, as the testimony shows it sometimes did, fall down. The chute being four feet wide, two feet projected at each side of the pin supporting it. There was no rigid attachment to the bin. The coal passed onto the chute from an opening four feet wide. Under these conditions, while the testimony shows the chute usually, when it fell, fell down straight, it is apparent that, if the chute became loaded unequally, it could tip and swing to one side, as the plaintiff testified it did in this case. The plaintiff was required to stand opposite the chute, on the uneven surface of coal, and steady it. At times, as was the case when the accident occurred, the work was done at night by the light of torches. Whether, under these conditions, such swinging and falling of a chute of this size, loaded with coal, becomes a source of danger to an employee required to stand opposite it, is a question of fact for the jury.

While there is little evidence in the case as to other appliances used for a similar purpose, it is apparent that this one, if dangerous, was so because of the lack of rigidity of its attachment to the bin while in use, and of the balancing of the lower end on a pin resting on a sloping surface, or by the combination of these two conditions. It does not require the assistance of mechanical experts to show that these conditions could be readily changed. Whether the defendant, in the exercise of reasonable care for the safety of its employee, should have adopted a different appliance, or a different requirement as to its employee working near it, was, under the evidence, a question for the jury.

2. The principal basis for the claim of the defendant that plaintiff was negligent in such manner as to contribute to his injury lies in the testimony offered by the defendant tending to show that plaintiff received his injury while he was attempting to steady the coal chute by placing his knee under it, in connection with testimony

that the plaintiff had been warned that to do this would be dangerous. Plaintiff testified that at the time of the accident he was not attempting to steady the chute in this way, but, on the other hand, was standing beside the chute, steadying it with his hand. If his testimony was true, he was doing the work in the required way. It was for the jury, under this condition of the testimony, to determine the position taken by plaintiff in steadying the chute.

3. Under the evidence, does it appear that the plaintiff, prior to the injury, is chargeable with knowledge of the condition of this appliance, and with appreciation of the risk incident to standing near it and steadying it? There is nothing complicated about the coal chute in question. That it was balanced at the lower end on a swinging pin resting on a sloping surface was known to plaintiff, because he had, on the night in question, and many times before, pulled the chute down and placed the free end of the pin on the oil box. The method of fastening the chute to the bin was open to observation, and plaintiff testified it must have been hung in some way, and he knew it was hanging by either chains or cables. Further, he knew that, when coal ran down the chute, it had a tendency to tip at times, and it required some strength to steady it. It does not appear that he knew the amount of slack in the chains holding the chute to the bin when the chute was in place, or that he ever had observed that these chains permitted the chute to be pulled out from the bin a considerable distance, or that there was no device or attachment to hold it firmly in place. While the appliance is simple, the possible effect of passing coal over it out of the bin and through an opening such as here existed is not a matter so simple or generally understood that the court can say that a person, having no greater experience in such matters than the plaintiff is shown to have had, is chargeable with knowledge of the dangers and risks incident to standing beside such chute and attempting to steady it while coal is being delivered over it. Whether plaintiff knew, or should, in the exercise of reasonable care, have known and appreciated, the danger and risk in performing his required duties about this chute, was a question for the jury.

4. The chief apparent injury to the plaintiff immediately after

the accident was a fracture of one of the bones of the leg three or four inches below the knee. At the time of the trial, occurring some seven months after the accident, the plaintiff's knee and ankle were stiff, and there was evidence of considerable numbness in the lower leg, and of a sensitive and painful condition about the knee and ankle joints. Considerable testimony was introduced tending to show that much of this condition was due to the plaintiff's failure to treat the leg as directed by his attending physician. Without attempting to state fully all the evidence as to the extent of the injury, upon a careful examination of it, we have concluded that the amount of the verdict, above the sum of $3,000, is in excess of the amount warranted by the extent of the injury established by the evidence.

5. Plaintiff's medical expert, in answer to a question as to what the probability is as to the future disability of the plaintiff, answered: "It is possible that he will have partial use of his leg, and that he may always have certain disability all of his life." The question was objected to, and a motion made to strike out the answer. The answer stated an opinion so uncertain and indefinite that it should have been stricken out. Concededly, at the time of the trial, plaintiff's leg was disabled, the testimony by plaintiff's witness that it was possible that he would recover partial use of his leg was not prejudicial to the defendant. Defendant's medical witnesses testified that he would recover the use of his leg within six months. In an answer following that objected to by defendant, the plaintiff's expert gave it as his opinion that the plaintiff would not recover the use of his leg for two years, and perhaps longer. In view of this testimony, there is no basis for the claim that the jury were misled by the testimony objected to, or adopted the element of uncertainty in it in estimating the damages. The question of damages was clearly and fairly submitted to the jury by the charge.

Ordered, that a new trial be granted unless, within twenty days after a remittitur is filed in the district court, the respondent herein files his consent that the verdict be reduced to $3,000 in which case the order appealed from is affirmed, and judgment may be entered on the verdict as thus reduced.

Order modified.